McCLENDON, J.
| ¡¿Hattie M. Pidgeon appealed a summary judgment in favor of Tower Credit, Inc. (Tower) that (1) annulled a prior judgment in favor of Mrs. Pidgeon and (2) dismissed Mrs. Pidgeon’s reconventional demand. We affirm.
FACTS AND PROCEDURAL BACKGROUND
In 1990, Mrs. Pidgeon granted her son, Mark Allen Pidgeon, a usufruct over seven lots, “with all buildings and improvements thereon,” owned by Mrs. Pidgeon in East Baton Parish. In 1999, after Mark failed to pay a promissory note held by Tower, Tower obtained a judgment against Mark, and recorded that judgment in the public record of East Baton Rouge Parish. In 2000, after discovering that Mark owned a usufruct over the lots, Tower filed a request for a writ of fieri facias and asked that both Mark, the usufructuary, and Mrs. Pidgeon, the naked owner, be served with notice of the seizure. Mark’s property interest was seized and set for judicial sale. Before the sale could be held, Mrs. Pidgeon executed a termination of the usu-fruct by authentic act and obtained a temporary restraining order barring the sale.
Subsequently, Tower filed a suit against Mrs. Pidgeon asking that the act of termination she executed be annulled. The trial court dismissed Tower’s suit for failure to state a cause of action. Tower appealed.
On appeal, this court reversed and remanded. We found that a naked owner could not unilaterally terminate a donation of a usufruct for abuse of enjoyment. Rather, the naked owner must seek a judicial termination by filing suit to terminate. Tower Credit, Inc. v. Pidgeon, 2002-0183, p. 9 (La.App. 1 Cir. 12/31/02), 837 So.2d 766 (unpublished); see LSA-C.C. arts. 623-24 & 1566. Thus, Tower had stated a cause of action to seek an annulment of | sMrs. Pidgeon’s act of termination. Tower Credit, Inc., 2002-0183 at p. 10. We also noted that a creditor of the usufructu-ary may intervene in the judicial action to prevent termination of the usufruct, or delivery of the property to the naked owner, by offering to repair the damages caused by the usufructuary and by giving security for the future. See Tower Credit, Inc., 2002-0183 at p. 10; LSA-C.C. art. 625.
*378 On January 14, 2003, shortly after the appeal was handed down, Mrs. Pidgeon filed a suit entitled “Hattie M. Pidgeon versus Mark Pidgeon.” The suit named Mark as the only defendant, and sought a judicial termination of the usufruct. Even though Mrs. Pidgeon obviously knew that Tower held a recorded judgment against Mark, and had seized Mark’s usufruct, Tower was neither named in, nor notified of, the suit. After Mark did not respond to the suit, the usufruct was terminated by a default judgment dated May 14, 2003.
On July 15, 2003, in the same Pidgeon v. Pidgeon suit record, Tower filed a petition to annul the May 14, 2003 judgment terminating the usufruct. In response, Mrs. Pidgeon filed an answer, affirmative defenses, and a reconventional demand. Generally, her defenses and reconventional allegations (1) attacked the final and definitive 1999 judgment on the promissory note obtained by Tower against Mark, (2) challenged the seizure of property without a showing that additional amounts were owed, (3) claimed that Mrs. Pidgeon and her property interests were threatened, and (4) asserted that a bankruptcy stay had been issued prohibiting any actions against the debtor in bankruptcy, Mark.
On July 20, 2004, Tower filed a motion for summary judgment and a notice that the bankruptcy stay had been lifted to allow Tower to pursue its claim to, and judicial sale of, the usufruct. After a hearing, the trial court | ¿found that Tower, despite its right to be notified of an action against the recorded property interest, was not notified of the suit to terminate filed by Mrs. Pidgeon. By judgment dated January 31, 2005, the trial court annulled the May, 2003 judgment terminating the usufruct, and dismissed Mrs. Pidgeon’s re-conventional demand, with prejudice.
Mrs. Pidgeon appealed and assigned the following errors to the trial court’s actions:
1. The trial court committed manifest error by dismissing her reconventional demand and refusing to allow her to pursue her affirmative defenses.
2. The trial court committed manifest error when it failed to take judicial notice of the bankruptcy stay.
3. The trial court committed manifest error by annulling the May, 2003 judgment of termination because “there is no provision under Louisiana or Federal Law which allows a purported creditor of a usufructuary to file a direct action against the grantor of a gratuitous usufruct, who is also the naked owner.”
After a thorough review of the record, we find no manifest error or error of law in the ruling of the trial court annulling the termination judgment. The action to annul was filed against Mrs. Pid-geon only as the party who obtained a judgment affecting an interest in immovable property seized by Tower. Notice of Tower’s interest in the immovable property at issue was recorded in the public record long before Mrs. Pidgeon filed her suit to terminate. If the name and address can be reasonably ascertained, procedural due process-requires, at a minimum, notice of a proceeding that could deprive a person of an interest in property. Supreme Contractors, Inc. v. Halliburton Logging Services, Inc., 94-0234, p. 8 (La.App. 1 Cir. 2/23/96), 668 So.2d 1363, 1367, writ denied, 96-0660 (La.4/26/96), 672 So.2d 673; see Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); Lewis v. Succession of Johnson, 2005-1192 (La.4/4/06), 925 So.2d 1172. Thus, Tower had a right to notification of an action that sought to terminate its recorded interest in immovable property.
Additionally, we find no merit in Mrs. Pidgeon’s other arguments. Nothing in *379 Tower’s action to annul the judgment of termination represented an attempt by Tower to collect Mark’s debt from Mrs. Pidgeon. As to the stay issued in Mark’s bankruptcy proceedings, even if we assume it directly related to Tower’s claim of lack of due process, we find no error or prejudice by the trial court’s grant of judgment in Tower’s favor after the bankruptcy stay was lifted.
Concerning Mrs. Pidgeon’s affirmative defenses to the suit to annul, we find that she failed to rebut Tower’s evidence that no genuine issue of material fact existed, and that Tower was entitled to summary judgment annulling the 2003 judgment as a matter of law. See LSA-C.C.P. art. 966. Even if we assume that the 1999 judgment on the promissory note signed by Mark was defective and based on fraud, those defenses would not excuse or cure Mrs. Pidgeon’s failure to notify the holder of a recorded interest in immovable property of an action to terminate that interest.
Mrs. Pidgeon’s reconventional demand was based on similar allegations. On the motion for summary judgment, she submitted no evidence to establish a genuine issue of material fact remained concerning her claims that a bankruptcy stay remained in place, that she was harassed by Tower, or that Tower brought a direct action against Mrs. Pidgeon in an | ^attempt to seize her property, rather than the property interest belonging to her son, Mark.
For these reasons, we affirm the judgment of the trial court by memorandum opinion issued in compliance with URCA Rule 2-16.l.B. The costs of the appeal are assessed to appellant, Mrs. Pidgeon.
AFFIRMED.