McClendon, j.
|2In this appeal, the plaintiff challenges a judgment that granted a motion to return security filed by the intervening creditor. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On August 30, 1999, Tower Credit, Inc. (Tower) recorded a Baton Rouge City Court judgment obtained on July 28, 1999, against Mark Pidgeon in the public records of East Baton Rouge Parish. As part of its collection efforts, Tower searched the public records and learned that Mr. Pid-geon owned a usufruct over a piece of immovable property in East Baton Rouge Parish. Mr. Pidgeon’s mother, Hattie Pid-geon, granted the usufruct to her son by an Act of Donation dated October 31,1990, which was recorded in the public records of East Baton Rouge Parish on November 2,1990.
On March 16, 2000, Tower filed a request for a writ of fieri facias with the Clerk of Court of the Baton Rouge City Court. Pursuant to that request, the Baton Rouge City Constable issued the writ and notice, seized the usufruct, and set the judicial sale for September 13, 2000. On August 8, 2000, after the notice and seizure, but before the sale, Ms. Pidgeon executed an “Act of Termination of Usu-fruct.” [1] The purported act, which was not *821 signed by Mr. Pidgeon, was recorded in the public records of East Baton Rouge Parish on August 10, 2000. On the morning of September 13, 2000, Ms. Pidgeon obtained a temporary restraining order from Baton Rouge City Court, barring the judicial sale of the usufruct.
Thereafter, on September 15, 2000, Tower filed a Petition to Annul Termination of Usufruct in the 19th Judicial District Court, in which it named Ms. Pidgeon as defendant. Subsequently, Ms. Pidgeon filed a motion to dismiss, asserting that Tower did not have a cause of action. The trial court granted Ms. |3Pidgeon’s motion, and Tower appealed. On December 31, 2002, this court reversed, holding that Tower possessed a cause of action.[2]
Shortly thereafter, on January 14, 2003, Ms. Pidgeon filed a petition to terminate the usufruct in a different division of the 19th Judicial District Court. The suit only named Mr. Pidgeon as a defendant, and no service was requested or made on Tower. When Mr. Pidgeon failed to respond to the suit, Ms. Pidgeon obtained a default judgment on May 14, 2003, terminating the usufruct. Upon learning of the default judgment, Tower filed a petition, on July 15, 2003, in this matter to annul the May 14, 2003 judgment terminating the usu-fruct.[3]
On July 20, 2004, Tower filed a motion for summary judgment. After a hearing, the trial court found that Tower, despite its right to be notified of an action against the recorded property interest, was not notified of the suit to terminate the usu-fruct filed by Ms. Pidgeon. The trial court granted summary judgment in Tower’s favor on January 31, 2005, annulling the May 14, 2003 judgment that terminated the usufruct. Ms. Pidgeon appealed the judgment, and we affirmed. See Pidgeon v. Pidgeon, 05-1223 (La.App. 1 Cir. 6/21/06), 939 So.2d 376. Thereafter, pursuant to Tower’s motion to post security under LSA-C.C. art. 625, the trial court ordered that Tower post security in the amount of $25,000.00, which it did on November 21, 2007.[4]
On May 31, 2008, fire damage rendered the subject property uninhabitable. On October 27, 2010, Ms. Pidgeon filed an ex parte motion, requesting that the security be released to her. The matter was set for hearing, and the motion was denied on January 19, 2011. On October 25, 2012, Tower 14filed its own motion for the return of the $25,000.00 security. The motion was heard and judgment was signed on December 3, 2012, granting the motion and ordering the clerk of court to return the $25,000.00 security to Tower. Thereafter, on December 17, 2012, the trial court signed a final judgment granting Ms. Pid-geon’s motion to terminate the usufruct. Ms. Pidgeon now appeals the December 3, 2012 judgment that ordered the return of the security to Tower.
DISCUSSION
In her appeal, Ms. Pidgeon argues that a judgment creditor of a usufructuary may *822 not intervene to prevent termination of a usufruct without repairing the damage caused by the usufructuary, without pledging security for the future, and without being required to fulfill the obligations imposed upon the usufructuary in the act of donation. However, Tower argues that according to LSA-C.C. art. 625, the $25,000.00 only secures the future and, thus, does not cover any damage incurred prior to its posting.[5] Tower also contends that it is not responsible for extraordinary repairs under LSA-C.C. art. 577 and, thus, is not responsible for the fire damage to the property on May 31, 2008.[6]
Tower further asserts that for the twenty-two months between the time Ms. Pid-geon’s motion to return the security was denied and the filing of Tower’s motion to return the security, Ms. Pidgeon failed to present any evidence of any damage to the property that would be covered by the security. When Tower filed its motion, it argued that it no longer had a legally enforceable obligation |5owed by the usu-fructuary. The Baton Rouge City Court judgment was older than ten years and had prescribed.[7] Because it was no longer a judgment creditor of Mr. Pidgeon, Tower withdrew its opposition to the termination of the usufruct. Tower therefore argued that since it was no longer in a position to prevent the termination of the usufruct, the security was no longer needed.
The trial court agreed, finding that the city court judgment was extinguished and no longer enforceable. Thus, the seizure of the usufruct was no longer in existence.[8] Additionally, extraordinary repairs are those for the reconstruction of the whqle or of a substantial part of the property subject to the usufruct. See LSA-C.C. art. 578. Further, the trial court noted that neither party was in disagreement that the repairs necessitated by the fire in this case were extraordinary. Therefore, Ms. Pidgeon was responsible for the extraordinary repairs caused by the fire, and the trial court ordered the return of the security to Tower.
Upon our thorough review of the record, we can find no factual or legal error in the decision of the trial court ordering the return of the security to Tower.[9]
CONCLUSION
For the foregoing reasons, we affirm the December 3, 2012 judgment of the trial *823 court by memorandum opinion issued in compliance with Uniform Rules, Louisiana Courts of Appeal, Rule 2-16.1.B. Costs of this appeal are assessed to Hattie M. Pid-geon.
AFFIRMED.

. The act of termination was based on Article 623 of the Louisiana Civil Code which provides:
The usufruct may be terminated by the naked owner if the usufructuary commits waste, alienates things without authority, neglects to make ordinary repairs, or abuses his enjoyment in any other manner.

. We found that a naked owner cannot unilaterally terminate a donation of a usufruct and must seek a judicial termination by filing suit to terminate. See Tower Credit, Inc. v. Pidgeon, 02-0183 (La.App. 1 Cir. 12/31/02), 837 So.2d 766 (unpublished opinion).

. On July 2, 2003, Mark Pidgeon filed for bankruptcy relief in the United States District Court for the Middle District of Louisiana. The parties agree that on October 27, 2003, the bankruptcy court lifted the stay insofar as it affected the usufruct,

.Louisiana Civil Code article 625 provides:
A creditor of the usufructuary may intervene and may prevent termination of the usufruct and delivery of the property to the naked owner by offering to repair the damages caused by the usufructuary and by giving security for the future.

. Ms. Pidgeon admitted that her son never provided routine maintenance or made any ordinary repairs to the property since the usufruct was given in 1990.

. Louisiana Civil Code article 577 provides:
The usufructuary is responsible for ordinary maintenance and repairs for keeping the property subject to the usufruct in good order, whether the need for these repairs arises from accident or force majeure, the normal use of things, or his fault or neglect.
The naked owner is responsible for extraordinary repairs, unless they have become necessary as a result of the usufructu-ary’s fault or neglect in which case the usufructuary is bound to make them at his cost.
Extraordinary repairs are those for the reconstruction of the whole or of a substantial part of the property subject to the usufruct. All others are ordinary repairs, LSA-C.C. art. 578.

. On August 26, 2010, the Baton Rouge City Court signed its judgment extinguishing and dissolving Tower’s seizure of Mr. Pidgeon’s usufruct on the subject property.

. Ms. Pidgeon conceded in her opposition to Tower’s motion to return the security that "Tower ... no longer has a claim or any interest in the subject property.”

. Although Ms. Pidgeon continues to argue in this appeal that the trial court erred when it allowed Tower to intervene to prevent termination of the usufruct without requiring Tower to repair the damage caused by the usu-fructuary, the only judgment appealed from was the December 3, 2011 judgment ordering the return of the security.